IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

DARLENE HAMILTON,

    Plaintiff,

v.                                                                              No. Civ. 06-359 LH/LAM

AMERICA ONLINE, INC. and
DAVID NATER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On May 25, 2006, Plaintiff Darlene Hamilton ("Plaintiff") filed a Motion to Remand (Doc. No. 6). Briefing is complete on the remand issue. On October 6, 2006, Defendants America Online, Inc., ("AOL") and David Nater ("Nater") filed a Motion to Supplement Record in Support of Defendant's Response to Plaintiff's Motion to Remand (Doc. No. 23) (hereinafter "Motion to Supplement"). The parties have also finished briefing on the motion to supplement the record. The Court, having reviewed the briefs and arguments of the parties, the relevant law, and otherwise being fully advised, finds that Defendants' motion to supplement the record should be denied, and Plaintiff's motion to remand should be granted.

**I.  BACKGROUND**

On March 29, 2006, Plaintiff filed this case in the Second Judicial District Court, County of Bernalillo, State of New Mexico, against AOL, a foreign corporation authorized to do business in New Mexico, and Nater, an employee and agent of AOL.

The Complaint alleges that Plaintiff was employed by AOL on March 16, 1998, and that AOL terminated her on November 15, 2004. The Complaint asserts that Defendant Nater was

one of the AOL employees who, out of personal spite, procured Plaintiff's termination. Plaintiff was 56 years old at the time of her termination. Plaintiff asserts that she suffered an injury on March 13, 2003, during the course of her employment, which resulted in a permanent disability and for which Plaintiff claimed workmen's compensation benefits. The Complaint alleges six state-law counts: (1) age discrimination in violation of NMSA § 28-1-7; (2) discrimination based on a serious medical condition in violation of NMSA § 28-1-7; (3) retaliation for making a Workmen's Compensation Claim; (4) breach of contract; (5) prima facie tort; and (6) conspiracy to injure. All the counts except Count 4 contain allegations directed toward both AOL and Nater. Count 4, however, appears to make allegations against only AOL. The Complaint alleges Plaintiff is entitled to damages for the following: loss of earnings and bonuses; depression, anxiety, and illness; loss of employment benefits; punitive and exemplary damages; and costs and attorney's fees. The Complaint additionally asserts that Plaintiff was making an hourly wage of $13.43 at the time of her termination.

The Complaint was served on AOL on April 10, 2006. On April 28, 2006, AOL timely filed a Notice of Removal based on diversity jurisdiction. Defendants allege that Plaintiff is a resident of New Mexico and that AOL is a Delaware limited liability company who is not a citizen of New Mexico. Defendants assert that the amount in controversy is greater than $75,000.00. Finally, Defendants contend that Defendant Nater was fraudulently joined so that the fact that he is a non-diverse defendant should not defeat diversity jurisdiction.

On May 25, 2006, Plaintiff filed a Motion to Remand (Doc. No. 6) and a memorandum in support (Doc. No. 7). Plaintiff contends that the amount in controversy is only $74,000.00. In support, Plaintiff attached her affidavit in which she avers: "I was fortunately able to secure a

very good job shortly after leaving AOL and was able to reduce my damages.  My claim for damages, including attorneys' fees, costs and all other damages of any kind resulting from the wrongdoing alleged in my Complaint, is $74,000.00."  Pl.'s Mem. in Supp. of Mot. to Remand (Doc. No. 7), Aff. of Darlene Hamilton, ¶ 17.  Plaintiff also asserts that Defendant Nater was properly joined because he conspired with other AOL supervisors to create untrue accusations against Plaintiff and then to terminate her.  Plaintiff contends that she has a valid cause of action against Nater for civil conspiracy.

Following the completion of briefing on Plaintiff's motion to remand, Defendants filed a Motion to Supplement (Doc. No. 23).  Defendants requested to supplement the record with a chart prepared by Plaintiff computing her financial losses as a result of the allegedly wrongful termination.  The chart indicated that Plaintiff calculated her losses, through the end of the 2006 calendar year, as totaling $96,651.38.  Defs.' Mot. to Supplement, Ex. 2.  In response, Plaintiff argues that the chart includes losses for which Plaintiff cannot recover, that Plaintiff has limited her recovery to $74,000.00, and that the Court should thus not consider the chart in deciding the motion to remand.

## II.     DISCUSSION

### A.     Motion to Supplement

The amount in controversy is generally determined by the allegations of the complaint, or if they are not dispositive, by the allegations in the notice of removal.  *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).  When the amount in controversy is not apparent on the face of the complaint, a federal court must attempt to ascertain the amount in controversy by considering (1) plaintiff's cause of action as alleged in the complaint, (2) the notice of removal

defendant filed with the federal court, and (3) other relevant materials in the record. *Varela v. Wal-Mart Stores, East, Inc.*, 86 F.Supp.2d 1109, 1111 (D. N.M. 2000) (Baldock, J., sitting by designation). "It would be an overreading of *Laughlin* to ignore the context of the case, as informed by the substance of the complaint or by other material in the record *at the time of removal*." *Hanna v. Miller*, 163 F.Supp.2d 1302, 1305 (D.N.M. 2001) (Kelly, J., sitting by designation) (emphasis added). Courts may therefore consider "the substance and nature of the injuries and damages described in the pleadings, any attorney affidavits *filed prior to or in connection with the removal notice*, a plaintiff's *prior admission* in open court that the value of the claim exceeds the jurisdictional amount, or even a plaintiff's refusal to stipulate or admit that he or she is *not* seeking damages in excess of the requisite amount." *Id.* at 1306 (emphasis added). The Tenth Circuit has also indicated that courts may not consider additional evidence filed by defendants after the notice of removal in determining diversity jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1291 n.4 (10th Cir. 2001) (noting that it was arguable that court should not have considered amounts set out by defendants' post-removal briefs); *Laughlin*, 50 F.3d at 873 ("Kmart's economic analysis of Laughlin's claims for damages, prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum, does not establish the existence of jurisdiction at the time the motion was made.").

Although Defendants submitted the chart following the filing of their notice of removal, they nonetheless argue that the Court should consider the chart if the Court considers Plaintiff's post-removal affidavit. "[T]he propriety of removal is judged on the complaint as it stands at the time of the removal." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Numerous courts have therefore held

that it is not appropriate to consider a plaintiff's post-removal stipulation as to the amount in controversy. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 667 (3d Cir. 2002) ("[T]he amount in controversy must be calculated based on a reasonable reading of the complaint, and a plaintiff's stipulation subsequent to removal as to the amount in controversy or the types of relief sought is of no legal significance to the court's determination.") (internal quotations omitted); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000) (post-removal stipulation to reduce amount in controversy below jurisdictional limit does not require remand); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (holding that because jurisdiction is determined as of instant of removal, post-removal affidavit or stipulation is no more effective than post-removal amendment of complaint to deprive court of diversity jurisdiction); *Veale v. Standard Ins. Co.*, 2006 WL 1720551, *2 (N.D. Okla. June 22, 2006) (unpublished opinion) (court cannot consider post-removal stipulation limiting amount in controversy to under $75,000 because it is outside complaint and notice of removal). This rule prevents plaintiffs from unfairly manipulating the proceedings merely because their federal case begins to look unfavorable. *Rogers*, 230 F.3d at 872. Based on the foregoing, the Court will not consider Plaintiff's post-removal stipulation in her affidavit. The Court will also not consider the chart submitted by Defendants, which they submitted solely to impeach Plaintiff's stipulation. Accordingly, Defendants' Motion to Supplement should be denied.

    **B.**    **Motion to Remand**

            **1.**    **Amount in Controversy**

The Constitution provides that the "judicial Power shall extend to . . . Controversies . . . between Citizens of different States." U.S. Const. art. III, § 2. "The district courts shall have

original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — citizens of different States." 28 U.S.C. § 1332(a).  When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant may remove the action to federal court, *see* 28 U.S.C. § 1441(a), provided that no defendant "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

The federal statute providing for the removal of cases from state to federal court, however, was intended to restrict rather than enlarge removal rights. *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 65 (10th Cir. 1957).  Federal courts, therefore, are to strictly construe the removal statutes and to resolve all doubts against removal. *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982).  The removing party bears the burden of establishing the requirements for federal jurisdiction. *Martin*, 251 F.3d at 1290.

As aforementioned, the amount in controversy is generally determined by the allegations of the complaint, or if they are not dispositive, by the allegations in the notice of removal. *Laughlin*, 50 F.3d at 873.  The burden is on the party requesting removal to set forth in the notice of removal the underlying facts supporting the assertion that the amount in controversy exceeds $75,000. *Id.*  There is a presumption against removal jurisdiction. *Id.*  Uncertainties as to jurisdiction are resolved in favor of remand. *Martin*, 251 F.3d at 1290 (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).  When the plaintiff's damages are unspecified in the complaint, the defendant must affirmatively establish the jurisdictional amount by at least a preponderance of the evidence.  *See id.*  Punitive damages and attorney's fees should be considered in determining the amount in controversy.  *See Woodmen of World Life Ins. Society v.*

*Manganaro*, 342 F.3d 1213, 1217-18 (10th Cir. 2003).  Costs and interest, however, are excluded.  *See* 28 U.S.C. § 1332(a).

In this case, the Complaint does not allege a specific amount of damages.  Plaintiff states that she is entitled to compensatory damages for loss of earnings and bonuses; depression, anxiety, and illness; and loss of employment benefits; as well as punitive and exemplary damages and costs and attorney's fees.  The only detail that the Complaint provides that sheds any light on the specific damages is that AOL terminated Plaintiff on November 15, 2004, and that her hourly wage at that time was $13.43.  The Complaint, however, does not allege how many hours Plaintiff worked and for what period she seeks lost wages.  It is therefore not clear from the face of the Complaint that the amount in controversy exceeds $75,000.  Consequently, the Court must turn to the Notice of Removal.

In the notice, Defendants assert that Plaintiff earned $52,000 at AOL in calendar year 2004, and that her benefits were worth approximately $5,500 per year.  Defendants also state that Plaintiff's salary would have increased by $3 per hour in January 2006 if she had remained an employee, resulting in a salary increase of approximately $6,000 per year.  Defendants attached the Declaration of Craig Alter, the Human Resources Generalist for AOL, to its notice as evidence of Plaintiff's compensation and benefits.  Defendants contend that Plaintiff's lost earnings and benefits, from the time of her termination to the time that she filed her Complaint, coupled with emotional distress damages and attorney's fees, exceed $75,000.

Defendants' argument relies heavily on Plaintiff's wage information for the year 2004.  Plaintiff earned $52,067.05 from January 1, 2004, through November 15, 2004.  Notice of Removal, Ex. D (Decl. of Craig Alter), ¶ 4.  This figure, however, includes Plaintiff's base salary

7

as well as bonuses earned that year.  *Id.*  Plaintiff's base pay was only $13.43 per hour.  Compl. ¶ 2.  Nowhere in the notice, however, do Defendants demonstrate how many hours a week Plaintiff worked.  Assuming a 40-hour work week and 52 weeks worked per year, Plaintiff's base salary would only have been about $27,934.40.  Plaintiff's salary in 2004 thus included significant bonuses.  Defendants do not provide any evidence to indicate that Plaintiff would have received the same amount of bonuses in calendar year 2005.  In calendar year 2003, for example, Plaintiff earned only $38,538.75 in salary and bonuses.  Notice of Removal, Ex. D, ¶ 5.  Plaintiff's bonuses varied substantially between 2003 and 2004, indicating that the Court cannot merely assume that the $52,067.05 earned in 2004 represents what Plaintiff would have earned in 2005.  Defendants provide no underlying facts to establish what Plaintiff's bonuses were likely to be in 2005, but rather ask the Court to speculate that Plaintiff's bonuses in 2004 would remain steady in 2005 and early 2006.  There is no factual basis for this in the record.  *Cf. Juneau v. Intel Corp.*, No. Civ. 02-310 LH (D.N.M. Nov. 5, 2002), Memorandum Opinion and Order at 4-5 (holding that where plaintiff earned approximately $60,000 in wages and $17,000 in benefits at time of termination but plaintiff's wage information included significant over-time income and defendant provided court with no underlying facts to establish what loss of income would be, defendant failed to establish amount in controversy).

   Furthermore, Defendants do not provide the Court with calculations establishing that the amount in controversy necessarily exceeds $75,000.  Defendants merely state that Plaintiff made $52,000 in 2004, Plaintiff made $38,538.75 in 2003, Plaintiff's benefits were worth $5,500 per year, and Plaintiff's salary would have increased by $3 per hour in January 2006.  Defendants failed to set forth the relevant information necessary to calculate Plaintiff's potential damages,

such as the number of hours Plaintiff would have worked per week, the number of weeks Plaintiff would have worked, and the factual basis for the period of time Plaintiff seeks lost wages and benefits. Thus, Defendants' assertion that Plaintiff's lost earnings and benefits are in excess of $75,000 is conclusory at best. The lack of information and calculations would force the Court to engage in significant speculation as to the proper way to calculate Plaintiff's damages.[1]

Defendants also did not offset Plaintiff's damages. In determining Plaintiff's lost wages and benefits, the Court must consider Plaintiff's duty to mitigate her damages. Although Defendants mention that "Plaintiff's lost earnings could potentially be offset by income earned during the past 18 months," Defendants do not offer any facts to suggest what amount the Court should use in offsetting Plaintiff's damages or to show that the amount in controversy exceeds $75,000 even taking into account Plaintiff's duty to mitigate. Offsetting Plaintiff's wages assuming only a full-time minimum wage job for 52 weeks (and Plaintiff's earning capacity is likely higher) would reduce Plaintiff's damages for lost wages considerably.

In sum, Defendants have not demonstrated that Plaintiff's damages for lost wages and benefits exceed $75,000. Defendants have also not provided the Court with any underlying facts to show what the claimed amounts for emotional distress damages, punitive damages, and attorney's fees might be. Defendants' Notice of Removal did not even attempt to place a value on any such awards. Based on the record before it, the Court is unable to conclude that

---

[1] For example, should the Court assume the Plaintiff would make $52,000 in 2005? $38,538.75? An average of the two? More than $52,000, since that figure only accounts for work through November 15, 2004? Should the Court assume Plaintiff worked 52 weeks a year? Defendants' failure to include key information, including its own method of calculating Plaintiff's lost wages, make the amount in controversy uncertain.

Plaintiff's employment-related injuries give rise to a claim of at least $75,000.  Because Defendants' removal is based on speculation as to what damages Plaintiff seeks, rather than underlying facts of the minimum jurisdictional amount proven by a preponderance of the evidence, and because uncertainties as to jurisdiction are resolved in favor of remand, Plaintiff's motion to remand will be granted.

### 2. Fraudulent Joinder

The Court has determined that it lacks diversity jurisdiction because Defendants have not established that the amount in controversy in this case exceeds $75,000.  The Court therefore need not determine whether Plaintiff fraudulently joined Defendant Nater.

**IT IS THEREFORE ORDERED** that

1. Defendants' Motion to Supplement Record in Support of Defendant's Response to Plaintiff's Motion to Remand (Doc. No. 23) is **DENIED**;

2. Plaintiff's Motion to Remand (Doc. No. 6) is **GRANTED**; and

3. This case is hereby **REMANDED** to the Second Judicial District Court for the State of New Mexico.

_____
SENIOR UNITED STATES DISTRICT JUDGE